UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RON ROMBERGER,

        Plaintiff,

v.

                                       Case number 07-13210

WELLS FARGO BANK, N.A., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,    Honorable Julian Abele Cook, Jr.
AND TROTT & TROTT, P.C.,

        Defendants.

ORDER

On August 1, 2007, the Plaintiff, Ron Romberger, acting without the benefit of counsel, filed a complaint in an effort to quiet title and obtain damages against the Defendants, Wells Fargo Bank, N.A.("Wells Fargo"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Trott & Trott, P.C. On April 14th of the following year, the Defendants collectively filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or as an alternative theory, to obtain a summary judgment against Romberger under Rule 56(c).

I.

On August 18, 2006, Romberger signed a mortgage in favor of MERS for the sum of $499,000.00 which was applied to a parcel of property at 54414 Pelican Lane in Shelby Township, Michigan. At a later time during the same year (December 21st), his mortgage was assigned to

1

Wells Fargo. When Romberger failed to satisfy his financial obligations under the mortgage,[1] Wells Fargo retained the law firm of Trott & Trott to initiate foreclosure proceedings against the property. On December 29, 2006, this law firm transmitted a letter to Romberger which ostensibly outlined his financial obligations on the mortgage.

For the four week period between January 5, 2007 and January 26, 2007, Wells Fargo caused a notice of a foreclosure sale to be placed in the Macomb County (Michigan) Legal News. Wells Fargo also posted a notice of the foreclosure sale on the property on January 10, 2007. (Def.'s Ex. H.) During the following month (February 2, 2007), Wells Fargo acquired the property for $500,544.90 by virtue of a sheriff's sale.[2]

Following the expiration the statutory six month redemption period on August 2, 2007, Romberger commenced this *pro se* litigation, in which he contended that the Defendants had (1) violated the Fair Debt Collection Practices Act ("FDCPA"); (b) intentionally caused him to suffer the infliction of emotional distress; and (c) encroached upon his fundamental rights under the Fourteenth Amendment to the United States Constitution. On April 14, 2008, the Defendants filed a motion with the Court, seeking to obtain (1) the dismissal of this *pro se* complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or (2) the entry of a summary judgment as authorized by Rule 56(c).

Prior to the commencement of the hearing on July 10, 2008 that had been scheduled to evaluate the parties' positions relating to the Defendants' pending dispositive motions, the Court

---

[1] Wells Fargo claims that Romberger's last payment was applied to his September 2006 account.

[2] A sheriff's deed arising out of the mortgage sale was recorded on February 12, 2007. (Def.'s Ex. H.)

– noting that (1) Romberger had filed this lawsuit without the benefit of an attorney, and (2) the loss of his property interests were potentially at stake – embarked upon a series of questions with him, all of which were designed to determine if he was represented by an attorney who would be able to assist him in this case.[3] After responding in the affirmative to the inquiries by the Court, Romberger asked for a brief adjournment of the hearing so that he could consult with his unnamed and unidentified counsel. His request was granted and the hearing was continued until two o'clock in the afternoon of July 29, 2008.

Although the hearing was adjourned for nearly three weeks at Romberger's request, neither he nor anyone purporting to represent his interests in this litigation appeared in court on the newly scheduled date (to wit, July 29th). After delaying the commencement of the hearing for approximately fifteen minutes, it became apparent to the Court that (1) Romberger, who had neither called nor submitted any reason for his failure or inability to attend the hearing, would not participate in the oral arguments, and (2) there was no reasonable basis upon which to delay the scheduled oral arguments once again without inflicting a prejudice upon the moving parties. Thus, the Court permitted counsel for the Defendants to produce evidence in support of her clients' application for dispositive relief. For the reasons that were stated at the hearing, the Court granted the Defendants' motions to dismiss and for summary judgment.

II.

In assessing the Defendants' motions, the Court turns initially to the Federal Rules of Civil Procedure which authorize the dismissal of a claim on any issue of law. Fed.R.Civ.P. 12(b)(6). Thus, if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

---

[3]To date, no attorney has filed an appearance on behalf of Romberger.

which would entitle him to relief," then the court must grant a motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In considering a motion under Rule 12(b)(6), the court must "accept all of the plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Engineers and Associates, Inc. v. West Bloomfield Tp.,* 922 F.2d 328, 330 (6th Cir. 1990). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 110 (6th Cir. 1995).

This standard of review requires more than a bare assertion of legal conclusions. *Lillard v. Shelby Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). A complaint should give the defendant fair notice of the plaintiff's claim as well as the grounds upon which it rests. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). In *Lillard*, the Sixth Circuit Court of Appeals declared that "[in] practice, 'a complaint. . . must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 726, quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988).

Turning to the Defendants' alternative request for relief (i.e., the entry of a summary judgment), the language in Federal Rule of Civil Procedure 56(c) provides that a motion for a summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movants to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable

to the non-moving party. Fed. R. Civ. P. 56(c); *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively in order to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). Importantly, the presentation of a mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

III.

In his complaint, Romberger asserts that his Fourteenth Amendment rights to equal protection and due process were violated by the Defendants when they foreclosed upon his property in Shelby Township. In submitting this argument, Romberger contends that his fundamental

5

constitutional rights were violated because he was not given an opportunity to cross-examine the witnesses during the foreclosure proceedings.

The record in this cause indicates that Romberger's property was foreclosed by advertisement. Foreclosure by advertisement is governed by the terms of the mortgage contract and regulated by Michigan law. Mich. Comp. Laws § 600.3201 *et seq.*[4] The constitutionality of foreclosure by advertisement has been examined and subsequently determined to be valid by the Sixth Circuit Court of Appeals, the Michigan Supreme Court, and the Michigan Court of Appeals. *Northrip v. Fed. Nat'l Mortgage Ass'n*, 527 F.2d 23 (6th Cir. 1975) (no state action exists in foreclosure actions by advertisement); *Cramer v. Metropolitan Savings & Loan Ass'n*, 401 Mich. 252, 258 N.W.2d 20 (1977); *Cheff v. Edwards*, 513 N.W.2d 439, 441 (Mich. Ct. App. 1994). In *Northrip*, the mortgagor was not afforded a hearing prior to the foreclosure on her property. The Sixth Circuit Court of Appeals determined that (1) foreclosure by advertisement was "an incident of the private right to contract," and (2) "the state did not exert any control or compulsion over the creditor's decision to repossess." *Northrip*, 527 F.2d at 26-7, 28. Despite the existence of a statute which regulates foreclosure by advertisement in Michigan, and the involvement of two county officials (namely, the sheriff and the register of deeds) in the procedure, the *Northrip* Court concluded that no state action existed for Fourteenth Amendment purposes. Hence, the creditors,

---

[4]Mich. Comp. Laws § 600.3201 states: "Every mortgage of real estate, which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner specified in this chapter."

Under Michigan law, a party may foreclose a mortgage by advertisement if all of the following circumstances exist: (a) a default on the mortgage; (b) an action or proceeding at law has not been instituted; (c) the mortgage containing the power of sale has been properly recorded; (d) the party foreclosing the mortgage is either the owner of the debt or of an interest in the debt.

Mich. Comp. Laws § 600.3204.

6

who pursued foreclosure, were not subject to constitutional restraints. *Id*., at 28-9; see also *Cheff*, 513 N.W.2d at 441. Although Romberger has alleged that he was denied a hearing and an opportunity to cross- examine witnesses, there is no indication in the complaint or in his response to the Defendants' motion for summary judgment that this case involved a state action.

IV.

Romberger also alleges in his complaint that the Defendants violated 15 U.S.C. § 1692g of the Fair Debt Collection Practices Act ("FDCPA") by failing to verify a debt, and by not ceasing to pursue their collection efforts pending the verification. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due. . ." 15 U.S.C. § 1692a(6). This statute also provides that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."

It is the positions of Wells Fargo and MERS that they do not meet the definition of a "debt collector," as defined by the FDCPA. Wells Fargo was the creditor under the mortgage and the holder of the note, and as such, it qualifies for the statutory exclusion from liability. *See* 15 U.S.C. § 1692a(6)(A) for creditors attempting to collect debts owed to them while using their own names. MERS, as the original mortgagee, is in the same position as Wells Fargo. Romberger has not put forth any allegations or evidence that either of these Defendants transmitted any correspondence to him in an attempt to collect on debts other than on those obligations that were owed directly to them. Based on the allegations before the Court, neither Wells Fargo nor MERS satisfy the statutory definition of a "debt collector" under the FDCPA.

7

Trott & Trott, in joining with the other two Defendants who seek exclusion from liability under the FDCPA, argue that it had been retained by Wells Fargo only to handle the foreclosure proceedings – not to collect the debt. There exists some disagreement among the circuits as to whether law firms that handle foreclosures qualify as debt collectors. On this issue, Trott & Trott point to a 1993 case which arose out of this Court wherein the judge made a distinction between the employment of a law firm to serve as the actual collector of the debt, and one that is retained only to represent the actual creditor in a lawsuit. *Williams v. Trott*, 822 F.Supp. 1266, 1268 (E.D. Mich. 1993.) However, the Supreme Court took up this issue two years later in *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) and held that the FDCPA did apply to litigating lawyers. This decision had the practical and legal effect of rejecting the approach that had been taken by the Sixth Circuit Court of Appeals in *Green v. Hocking*, 9 F.3d 18 (1993). In rendering its decision, the *Heintz* Court held that law firms which "regularly" engage in consumer-debt collection activity are considered "debt collectors," even if such an activity consists of, or incorporates, litigation.

Trott & Trott submit that Romberger's claim under the FDCPA should be dismissed because it does not satisfy the definition of a debt collector. However, when construing the facts in a light that are most favorable to Romberger at this stage of the proceedings, the Court cannot conclude that Trott & Trott is not a debt collector, as that term is used in the FDCPA. In fact, there is evidence that this law firm forwarded letters to Romberger which stated: "THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT." (Def.'s Ex. D.)

In addition, Trott & Trott contend that Romberger has failed to satisfy his statutory responsibilities regarding the validation of his debt. On this issue, the Court must look to 15 U.S.C. 1692g(b) which addresses this issue:

8

> Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

In his complaint, Romberger maintains that he "wrote Defendant [sic] letters requesting they validate the debt. . . ." (Complaint at ¶ 8.) In addition, Romberger insists that he "received no response from sending" a request for validation. (*Id.* at ¶ 9.) However, this statement has been challenged by the Defendants, all of whom have denied his allegation. Trott & Trott, as well as the other Defendants, have affirmatively asserted that Romberger never submitted a request for validation to any of them. In support of their response to Romberger, they have proffered affidavits

from Daniel Cohen,[5] Camelia Martin[6] and Ebony Gerwin,[7] all of whom support their argument. (Def.'s Ex. E, F, and G.)

In his response to the Defendants' dispositive motion, Romberger has failed to provide a specific allegation or any evidence which demonstrates that he submitted a request for validation to any of the Defendants. Furthermore, he has failed to provide the Court with a specific date when a request was sent by him to the Defendants. Finally, Romberger has not been able to supply the Court with any evidence of his alleged transmittal letter (e.g., photocopy of the request for validation). A careful reading of his response to the Defendants' dispositive motion reveals that it is unintelligible and facially appears to have been the subject of a "cut and paste" effort. More importantly, Romberger's letter does not counter the Defendants' specific contention that he never submitted a request for validation.

V.

Accordingly, for the reasons that have been set forth above and set forth on the record during the hearing, the Defendants' motion to dismiss Romberger's Fourteenth Amendment claim is granted, as no state action was involved in the dispute here. In addition, the FDCPA claims by Romberger against Wells Fargo and MERS are dismissed because there is no evidence that they

---

[5]Daniel Cohen, an employee of Wells Fargo who claims to be familiar with its books and records, stated in an affidavit that "with the exception of Plaintiff's Complaint, Wells Fargo Bank, NA does not have a record of receiving any request from Plaintiff. . . to validate the Mortgage debt." (Def.'s Ex. E.)

[6]Camelia Martin is an employee of MERS who – like Daniel Cohen – professes to have familiarity with the books and records of her employer. In an affidavit, she states that MERS has no record of receiving a request for validation from Romberger. (Def.'s Ex. F.)

[7]Ebony Gerwin, in her affidavit, avers that she (1) is an employee of the Trott & Trott law firm, (2) is familiar with the records of the law firm, and (3) her employer never received a request for validation from Romberger. (Def.'s Ex. G.)

10

are debt collectors, as defined by the statute. Finally, the Court must, and does, grant a summary judgment in favor of Trott & Trott arising out of Romberger's claim under the FDCPA.

Therefore, the Defendants' motion, which was filed with the Court on April 14, 2008, is granted in its entirety.

IT IS SO ORDERED.


Dated: August 14, 2008  
      Detroit, Michigan

s/ Julian Abele Cook, Jr.  
JULIAN ABELE COOK, JR.  
United States District Court Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 14, 2008.

s/ Kay Alford  
Case Manager